HIRSCHBERG, Appellant, vs. BACHER, Respondent.

*October 28—November 17, 1914.*

*Partnership: Agreement construed: Termination: Good will as asset: Accounting: Evidence as to disbursements: Monthly statements.*

1. Under a copartnership agreement reciting that defendant was engaged in soliciting insurance and adjusting claims and that he was conducting such business in connection with the firm of A. & Son, general insurance agents, and providing that in consideration of certain payments to be made by plaintiff defendant assigned to him a one-third interest in said business and in the net income thereof, the partnership to continue for five years, the transfer to plaintiff did not include any element of value in the nature of good will; and at the termination of the partnership plaintiff was not entitled to recover from defendant any amount for good will as an asset of the business.

2. Such partnership agreement provided that defendant should be "the head and manager of the business," and that all questions concerning the business should, in case of disagreement, be settled and determined by him; also that the books should be closed on January 1st in each year and the profits, if any, be then divided. The account of the income and disbursements of the business was kept in the books of A. & Son, entries of expense therein being made as given to the bookkeeper by defendant. He also

gave plaintiff monthly statements of the earnings, to which plaintiff made no objection until the termination of the partnership. *Held*, that the books of account and the monthly statements were competent and established *prima facie* the items involved in the accounting between the partners.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

This is an action to recover moneys the plaintiff claims are due him under a contract with the defendant to conduct an insurance business in the city of Milwaukee. The cause was tried to the court and judgment awarded for the plaintiff in the sum of $1,789.60 with interest thereon at six per cent. per annum from June 20, 1911.

The defendant *Bacher* was an insurance solicitor in the city of Milwaukee on and prior to September 1, 1905. His business consisted in soliciting insurance and the adjusting of claims. The business conducted by him was in the name of Louis Auer & Son, which firm was conducting a general insurance business, and at the time here involved was the general agent for the Frankfort General Insurance Company. The plaintiff and *Bacher* entered into the following agreement on the 1st of September, 1905:

"Agreement of copartnership, entered into this first day of September, 1905, by and between *Julius Bacher* of the city of Milwaukee, county of Milwaukee and state of Wisconsin, party of the first part, and *Joseph G. Hirschberg* of the same place, party of the second part.

"Whereas, said party of the first part is now engaged in the business of soliciting employers' liability, accident, fire and other insurance in the state of Wisconsin and elsewhere, and also in adjusting and settling claims under employers' liability and accident insurance policies; and

"Whereas, said party of the first part is desirous of obtaining a partner in his said business, which he conducts in connection with Louis Auer & Son in said city of Milwaukee, and said party of the second part is desirous of becoming such partner;

"It is agreed that said party of the second part shall pay to said party of the first part the sum of three thousand and no/100 ($3,000) dollars upon the date hereof, and the said party of the first part is to receive from and out of said second party's share of the profits of said business, as herein fixed, the additional sum of three thousand dollars as follows: one thousand and no/100 ($1,000) dollars upon the first days of September, 1906, 1907, and 1908, for and in consideration of which said party of the first part agrees to assign, and hereby does assign, to said party of the second part a one-third ($\frac{1}{3}$) interest in said business and in the net income thereof; and it is further agreed that out of the gross receipts of said business all expenses shall first be paid, including all sums due to said Louis Auer & Son, pursuant to the agreements made, and to be made from time to time, between said Louis Auer & Son and said first party hereto, which said sum so paid to Louis Auer & Son shall in no event exceed one quarter ($\frac{1}{4}$) of the net receipts of the partnership hereby created, after payment of all other expenses.

"It is further agreed that should the party of the second part secure new business so as to increase the income of said partnership by the sum of five hundred ($500) dollars or more per year, in excess of the increase in income secured by said first party in the same year, then said party of the second part is to receive fifty (50) per cent. of said additional income secured by him in excess of the increase secured by said first party, instead of one third ($\frac{1}{3}$).

"It is further agreed that said party of the second part is to have the right to draw out of his share of the profits of said business no more than the sum of one hundred and no/100 ($100) dollars per month until said first party has received full payment of all sums agreed by this contract to be paid to him.

"It is further agreed that each party shall devote his entire working time, attention, talents and business capacity to said business hereby agreed to be carried on by them as copartners, it being understood that any business done by either party outside of the state of Wisconsin shall be subject in all respects to the terms of this agreement.

"It is further agreed that the books shall be closed on the first day of January in each year, and the profits, if any, at

once divided between said partners in accordance with the terms of this contract.

"It is further agreed that said partnership shall continue for five years (5) from the date hereof, and that said first party shall be the head and manager of the business, and all questions concerning such business shall, in case of disagreement between said partners, be settled and determined by said first party.

"Witness the hands and seals of said parties the day and year first above written.

"In presence of

"Ed. Porth.    JULIUS BACHER (Seal).

"W. Porth, Jr.    JOSEPH G. HIRSCHBERG (Seal)."

The plaintiff performed the conditions of the contract. The defendant notified the plaintiff that the partnership created thereby would not be continued after the expiration of the contract. At the expiration of the contract the plaintiff withdrew from any participation in the business.

The circuit court held that under the provisions of the partnership agreement the plaintiff had no right to recover for any good will as an asset of the business and that he was entitled to receive one third of the joint net earnings of plaintiff and defendant, realized from the business conducted by them, from September 1, 1905, to September 1, 1910. Upon this ruling the court awarded judgment to the plaintiff for $1,789.60, the amount found due him under the contract, with interest at six per cent. per annum from June 20, 1911. From this judgment the plaintiff appeals.

For the appellant there were briefs by *Rubin & Zabel,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley* and *Mr. W. B. Rubin.*

For the respondent there was a brief by *Doe, Ballhorn & Wilkie,* and oral argument by *J. B. Doe.*

SIEBECKER, J. The plaintiff contends that the trial court erred in finding there was due him under the contract the

sum of $1,789.60. It is urged that the court below com-
mitted error in refusing to allow the plaintiff recovery of the
value of good will as an asset of the partnership business ap-
propriated by the defendant, and that the court erred in al-
lowing charges of expense to be deducted from the income of
the partnership business which were not supported by evi-
dence, and thus deprived the plaintiff from recovering his
full share of the net income of the partnership business.
These claims of the plaintiff require interpretation of the con-
tract of the parties, designated a copartnership agreement.
It appears from the context of this agreement that the de-
fendant *Bacher* was, prior to and at the time this agreement
was made, engaged in the business of soliciting liability in-
surance and was conducting this business in connection with
the firm of Louis Auer & Son, who were doing a general in-
surance business in the city of Milwaukee. The contract
provides that out of the gross receipts of the business trans-
acted "all expenses shall first be paid, including all sums due
to said Louis Auer & Son, pursuant to the agreement made,
and to be made from time to time between said Louis Auer &
Son and said first party hereto, which said sum so paid to
Louis Auer & Son shall in no event exceed one quarter ($\frac{1}{4}$) of
the net receipts of the partnership hereby created, after pay-
ment of all other expenses." It was also agreed that the
plaintiff was to pay the defendant $3,000 on the day the con-
tract was made and an additional $3,000 out of his profits on
September 1, 1906, 1907, and 1908. In consideration of
these payments to the defendant he assigned to the plaintiff
"a one-third ($\frac{1}{3}$) interest in said business and in the net
income thereof." The partnership was to continue five years
from the date of the contract, September 1, 1905. The stip-
ulations of the contract and the recitals therein clearly con-
template that the business to be transacted by the partnership
was principally that which the defendant *Bacher* secured the
right to do by his connection with the firm of Louis Auer &

Son. The business transacted during the contract period was almost entirely under contract by defendant with this firm. It appears that the defendant had been engaged as soliciting agent for years under like arrangements with said firm and that there were a large number of policies in force at the time the plaintiff joined him in the business. It is urged that the down payment by the plaintiff of the $3,000 and an additional $3,000 out of his share of the earnings was a purchase by him of an interest which included an element of good will in defendant's business. The nature of the business and the terms of the contract tend to negative this claim. Defendant's business cannot be likened to an established commercial plant. Its advantages to plaintiff in associating himself therewith consisted in becoming acquainted with defendant's patrons, in sharing in the profits of the commissions that would naturally come to the firm through renewals of contracts with such patrons, and the proceeds of defendant's success as a soliciting insurance agent in connection with Louis Auer & Son. Under the circumstances and condition of this business it is apparent that the terms of the contract assigning to the plaintiff a "one-third ($\frac{1}{3}$) interest in the said business and the net income thereof," granted to plaintiff an interest in the earnings thereof for the contract period. We find nothing in the agreement, when applied to the situation of the parties, to indicate that they contemplated that the transfer of an interest in the business and the income thereof was to include an element of value in the nature of good will. We are of the opinion that the trial court properly held that the contract gave plaintiff a right to a one-third interest in their joint net earnings realized from the business during the contract period.

The question remains, Did the court find the correct amount due plaintiff out of the net proceeds of the business under the contract? The plaintiff contends that he has not been awarded recovery of the full amount due him, and bases this

contention on the ground that he has shown the gross amount of commissions and fees earned by them during the five years covered by the contract, and that defendant, who had charge of the disbursements, has failed to prove an amount thereof which reduces the gross earnings to the net amount found by the court. The account of the income and disbursements of the business was kept in the books of Louis Auer & Son. This is not disputed. According to the entries of these books the court allowed the plaintiff recovery for the correct amount due him. It however is urged that this basis of settling the partnership affairs is not proper, and that the book entries cannot control because the defendant failed to show that the disbursements as itemized in such book accounts are correct and proper deductions. The bookkeeper testified that she made the entries of expense therein as they were given to her by *Mr. Bacher*. It also appears that *Bacher* gave the plaintiff a monthly statement of their earnings, and that they were not objected to by the plaintiff as incorrect. The contract provides that the books shall be closed on the 1st day of January in each year, and that the profits, if any, be then divided. The contract furthermore provides that *Bacher* "shall be the head and manager of the business, and all questions concerning such business shall, in case of disagreement between such parties, be settled and determined by said first party" (*Bacher*). Under these terms of the contract *Bacher* clearly had the management of the business concerning the charges and disbursements and was authorized to direct the entry of the charges in the books of account. When he submitted monthly statements to plaintiff of the net earnings, it devolved upon the plaintiff to object thereto if he did not accept them as correct. This he never did until the five years of the contract had run. It is apparent that the plaintiff accepted the defendant's statement of the business expenses as correct until the contract period was about to expire. Under these circumstances and under the terms and conditions of

the contract for conducting the partnership affairs, the evidence of the monthly statements, the books of accounts, and the testimony of the bookkeeper that the items of expenditure deducted from the gross earnings were proper and correct as they appeared therein, *prima facie* established the items involved in the accounting. The facts and circumstances were competent proof on the subject and warranted the trial court in concluding that the items *Bacher* reported and directed to be charged as expenses should be deducted from the gross earnings. The court properly allowed them and awarded plaintiff a judgment for the balance due him on the amounts collected and paid before September 1, 1910, and for the amount earned before but collected after that date.

*By the Court.*—Judgment affirmed.