LAMBERT'S POINT TOW BOAT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18663. Promulgated July 17, 1929.

*Wm. H. White, Jr., Esq.,* for the petitioner.
*C. H. Curl, Esq.,* for the respondent.

1362

OPINION.

LANSDON: Petitioner claims a right to special assessment under the provisions of section 328 of the Revenue Acts of 1918 and 1921, upon the ground of abnormalities affecting its invested capital and income during the taxable year. The abnormalities in invested capital, it claims, result from its taking over at the time of its organization a going business of great value, built up by John Twohy who, in connection therewith, enjoyed a virtual monopoly of the business of docking and undocking vessels at the coal piers from which he operated; and further claims that the good will built up by Twohy

in these prior operations and his friendly relations with his employer, the railway company which owned the piers, by reason of which the petitioner enjoyed free use of its facilities during the first two years of its operations and preferences thereafter, were valuable assets which it acquired and which contributed to its earnings.

The record is deplorably lacking in evidence upon which we can come to any satisfactory conclusion as to the extent of the business carried on by John Twohy, which the petitioner took over, or the legal rights by which he enjoyed the advantages petitioner values so highly, and for this reason it is impossible to determine what weight, if any, should be assigned to such as income-producing factors in petitioner's business. But one witness, N. M. Osborne, president of petitioner, testified as to these matters. From him we learn that Twohy was employed by the Norfolk & Western Railway Co. but upon what basis, or with what special rights with reference to the use of these piers we are not informed. In addition to this employment the witness, referring to Twohy, says: " He also managed the two boats and docking and towing around the piers." No further attempts are made to enlighten us as to what Twohy did in this last mentioned connection, although the witness assures us that by reason of his relationship with the owner of the piers he enjoyed a " virtual " monopoly of the business. No records were preserved of this business and the only suggestion in aid of an estimate of the income from it is the statement of this witness, who owned an interest in one of the tugs, that " my recollection of it is we were generally paid around 30 to 40 per cent." This statement, of course, is too indefinite to be of value for any purpose, even though the witness had made known the frequency of such payments and the value of his interest, which he did not, and argument will not supply that which the evidence fails to establish. The only facts which we find satisfactorily established in the record in connection with the actual business carried on by Twohy and taken over by the petitioner are that in said business he, Twohy, employed four tug boats, and that on April 3, 1896, those boats were capitalized by petitioner at a value of $83,200. There was a going business of some kind, of course, taken over by the petitioner, but the facts concerning it, as hereinbefore stated, are so meager as to be almost nil, and whatever good will, if any, attached to it, was purely personal to Twohy. This seems too clear for serious argument. It was because of Twohy's daily presence on the docks when the vessels applied for coal and were assigned to berths that enabled him personally to book the business for himself or the petitioner. He could with equal freedom, even after the formation of the petitioner, have continued in this business on his own account or delivered it to a competitor of petitioner, since there is no evidence of a contract between Twohy

and petitioner binding him to its service, or limiting his freedom to contract with others. The petitioner, therefore, acquired nothing by way of good will. *Hirschberg* v. *Bacher*, 159 Wis. 207; 149 N. W. 383; *McCall* v. *Moschowitz*, 1 N. Y. St. 99; *Ryman* v. *Kennedy*, 141 Ga. 75; 80 S. E. 551. *A fortiori*, business secured through a monopoly can not be attributable to good will. *Wilcox* v. *Consolidated Gas Co.*, 212 U. S. 19.

The most that the petitioner acquired, according to the record, upon its organization, in addition to the four tugs valued at $83,200, was the services of an experienced executive in the person of Twohy, whose friendly relationship with his employer enabled it to secure certain advantages and privileges at the piers. In these advantages it at no time, however, prior to 1899, could claim a vested property right; neither could it so claim in the services of Twohy, since he was in no way bound to it through contract within the rule recognized in the *Viscose Co.* appeal, 3 B. T. A. 444, and other cases cited by petitioner in its brief, had his qualifications and value to it been such as to bring him within the classifications established in those cases.

The record shows that by far the greatest earnings made by the petitioner have been since the death of Twohy, and under its present management. The petitioner has wholly failed to sustain its allegations in respect to this assignment of error, and the action of the respondent thus challenged is, therefore, approved.

The abnormality claimed by petitioner as affecting its income for the taxable year is not established by the record. The reduction of its capital by one-half, under the circumstances shown, in no way affected, one way or the other, the capital actually employed in its business, since it merely amounted to disbursement of deferred dividends which had theretofore been added to its capital, but never used or needed in the business. The earnings for the year in question were materially in excess of those ordinarily produced in previous years, but there is no evidence to show that it is the result of abnormal conditions respecting either capital or income. It would rather seem, from all facts shown here, to be the normal result of a well managed business which has prospered on account of favorable conditions. In these circumstances there is no abnormality within the rule sought to be applied, and the determination of the respondent in so holding is approved. *DeBrown Auto Sales Co.*, 2 B. T. A. 896; *United Shoe Stores Co.*, 2 B.' T. A. 73; *Cleveland & Western Coal Co.*, 4 B. T. A. 93.

The remaining assignment of error challenges the act of the respondent in reducing its invested capital for the taxable year by the amount paid by it during said year on account of additional taxes for prior years. The issue raised by the petitioner respecting

this assignment of error was decided adversely to its contention by the Board in *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168, and other cases since, consistently followed. By virtue of the authority of these decisions, the action of the respondent in respect to this error is approved.

*Decision will be entered for the respondent.*